Ben Travis (State Bar No. 305641)
ben@bentravislaw.com
**BEN TRAVIS LAW, APC**
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: 619-353-7966

Lisa M. Freeman (State Bar No. 258549)
lisa@dapeer.com
**DAPEER LAW, P.A.**
11500 W Olympic Boulevard, Suite 550
Los Angeles, CA 90064
Telephone: 323-701-0508

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

EMMA TERTERYAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CHICO'S DISTRIBUTION SERVICES, LLC,

Defendant.

Case No. 2:26-cv-06079-SRM-E

**FIRST AMENDED CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

## INTRODUCTION

1. Plaintiff Emma Terteryan ("Plaintiff") brings this class action against Chico's Distribution Services, LLC ("Chico's" or "Defendant") for violations of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et seq.*; California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq. Plaintiff files this action on behalf of herself and all others similarly situated and makes the following allegations based upon personal knowledge as to her own acts, and upon information and belief as to all other matters, formed after a reasonable inquiry by her counsel.

2. Chico's operates several brand websites including Chico's (www.chicos.com), White House | Black Market (www.whitehouseblackmarket.com) and Soma (www.soma.com) (collectively the "Websites").

3. This action challenges Chico's' practice of imposing a hidden processing (also referred to herein as "handling") charge on consumers who purchase merchandise through its Websites. When a consumer browses the Websites, Chico's displays product prices that do not reflect the full cost of the transaction. It is not until the consumer has selected an item, chosen a size (and color, if applicable), added the product to a bag, and proceeds to their shopping bag to checkout, that Chico's informs them that the Shipping fee is actually a "Shipping & Processing" fee, which includes internal handling costs that California law requires to be disclosed in the advertised price.

4. The California legislature enacted Senate Bill 478, effective July 1, 2024, to eliminate precisely this kind of drip pricing. The amended CLRA permits retailers to exclude genuine postage or carriage charges from an advertised price, but it does not extend that exception to handling fees. The California Attorney General has confirmed: handling charges "must be included in the advertised price."

5. Chico's further demonstrates the discretionary character of this charge through its promotional structure. For example, on the White House | Black Market website, Chico's waives the "Shipping & Processing" fee for orders totaling $125 or more. A charge that a retailer can waive at will as a marketing incentive is not an unavoidable pass-through of carrier postage, but rather it is an internal cost of business.

6. Plaintiff seeks damages, injunctive relief, restitution, disgorgement and recovery of reasonable attorneys' fees and costs on behalf of herself and all similarly situated California consumers.

## PARTIES

7. Plaintiff Emma Terteryan is a natural person and, at all times relevant to this action, a citizen and resident of Santa Clarita, California.

8. Defendant Chico's Distribution Services, LLC is a Florida limited liability company with its principal place of business at 11215 Metro Parkway, Fort Myers, FL 33966. Chico's operates the Websites, through which it sells apparel, accessories, and related merchandise directly to consumers throughout the United States, including in California. Chico's also maintains retail store locations in California. Chico's regularly transacts business with California consumers through its Websites.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). This is a class action in which the putative Class exceeds 100 members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

10. This Court has personal jurisdiction over Chico's because Chico's conducts substantial business in the State of California. Chico's sells merchandise to California residents through its Websites as part of its ordinary course of business, collects the fees at issue in this action from California consumers, maintains brick-and-

mortar retail stores in California, and directs advertising to California residents through digital and traditional marketing channels.

11. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

### *A. California's Ban on Drip Pricing*

12. On October 7, 2023, Governor Newsom signed Senate Bill 478 into law. Effective July 1, 2024, SB 478 added subdivision (a)(29) to California Civil Code § 1770, making it unlawful to "[a]dvertis[e], display[], or offer[] a price for a good or service that does not include all mandatory fees or charges" except for two narrow categories: (1) "[t]axes or fees imposed by a government on the transaction," and (2) "[p]ostage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer." Cal. Civ. Code § 1770(a)(29)(A)(i)-(ii).

13. The legislative purpose was unambiguous. SB 478 was "intended to specifically prohibit drip pricing, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service."[1] The practice of revealing mandatory fees only at the tail end of a transaction was identified as a tactic that "boost[s] corporate profits at the expense of those who can least afford it."[2]

14. The exception for shipping costs is narrow by design. It covers only the actual "postage or carriage charges" a carrier imposes to transport a package. It does not cover handling. The California Attorney General's Office has stated: "A business

---

[1] Office of the Attorney General, Cal. Dep't of Justice, *SB 478 Frequently Asked Questions*, https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf.

[2] Office of the Attorney General, Cal. Dep't of Justice, *Attorney General Bonta Calls for California Legislature to Ban Hidden Fees (AKA Junk Fees)* (May 16, 2023), https://oag.ca.gov/news/press-releases/attorney-general-bonta-calls-california-legislature-ban-hidden-fees-aka-junk.

can exclude shipping charges, but not handling charges. . . . Like any other mandatory fee or charge, a *handling* charge must be included in the advertised price."[3] (Emphasis in original.)

15. The rationale for this distinction is straightforward. Shipping costs, which are made up of the postage or carriage a carrier like UPS or FedEx charges to move a parcel, are imposed by third parties and vary by destination. Handling costs, by contrast, are internal expenses the retailer chooses to incur in operating its fulfillment infrastructure: labor for picking and packing orders, warehouse overhead, and packaging materials. These are part of the cost of doing business, no different from rent or electricity, and must be reflected in the advertised price.

16. SB 478 did not create a new theory of liability out of whole cloth. The CLRA had already prohibited bait-and-switch practices. SB 478 just codified this practice with specificity.

***B. Chico's' Hidden Handling Charge***

17. Chico's operates nationwide e-commerce platforms at www.chicos.com, www.whitehouseblackmarket.com and www.soma.com. The Websites display thousands of apparel products such as shirts, pants, dresses, jackets, and accessories, each accompanied by an advertised price. None of these advertised prices include Chico's' handling charge.

18. A consumer visiting the Websites encounters product listings showing only the base merchandise price. No reference to any handling fee appears on the homepage, category pages, or search results.

19. When a consumer selects a product, the resulting product detail page displays the item's price, available sizes, color options, and a product description. The

---

[3] Office of the Attorney General, Cal. Dep't of Justice, *SB 478 Frequently Asked Questions*, https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf.

displayed price does not reflect any handling charge. No disclosure of such a charge appears on this page (*see **Figure 1*** below).




***Figure 1***

20. After the consumer clicks "Add to Bag," a shopping bag summary appears. This summary shows the selected item, its displayed price, and a subtotal. It does not reveal any handling charge. *See **Figure 2*** below.




***Figure 2***

21. When consumers click on their shopping bag, it informs them for the first time that the $8.95 shipping charge is for "Shipping & Processing." (*See **Figure 3*** below.)




***Figure 3***

22. The processing component of Chico's' fee does not qualify for either statutory exception. It is not a tax or government-imposed fee. Cal. Civ. Code § 1770(a)(29)(A)(i). Nor is it a "postage or carriage charge[] that will be reasonably and actually incurred to ship the physical good[] to the consumer." Cal. Civ. Code § 1770(a)(29)(A)(ii). It is an internal operational cost that Chico's has elected to strip from its advertised product prices and impose as a separate, undisclosed surcharge.

23. Chico's' own promotional behavior confirms the discretionary nature of the charge. For example, on the White House | Black Market website, Chico's waives the "Shipping & Processing" fee for orders totaling $125 or more. If the fee represented only the unavoidable cost of carrier postage, Chico's could not afford to absorb it as a routine promotional incentive. Instead, the handling portion of the fee is a discretionary surcharge that Chico's uses as a lever to drive credit card sign-ups and larger basket

sizes—confirming that it is an internal business cost, not a pass-through of third-party charges.

24. Chico's only reveals the "Shipping & Processing" fee once a consumer is ready to checkout. By the time a consumer realizes that a handling charge was surreptitiously added to their purchase, they have already invested significant time in the purchasing process—browsing the catalog, selecting an item, choosing a size and color. These sunk costs create psychological friction that discourages consumers from disputing hidden fees, navigating a cumbersome return process, or beginning their purchase journey all over again at a competing retailer. This is precisely the consumer harm that SB 478 was enacted to prevent.

25. The "Shipping & Processing" fee is a flat charge ($8.95 for standard delivery) applied uniformly regardless of the merchandise's weight, size, or value, the delivery destination, or the carrier or service actually used. On information and belief, Chico's does not calculate the fee by reference to the postage or carriage charges it actually incurs for any particular shipment. A uniform flat fee untethered to any particular shipment is not a pass-through of "[p]ostage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer." Cal. Civ. Code § 1770(a)(29)(A)(ii).

26. Chico's' own statements in parallel litigation confirm that the processing component of the fee encompasses internal fulfillment costs. In *Alonzo v. Chico's Distribution Services, LLC*, No. 3:26-cv-03719-LL-VET (S.D. Cal.), Chico's told the court that the term "processing" was added to the fee's label "in response to a different wave of fee litigation years ago" in order to cover "distribution center movement." (*Alonzo*, Dkt. 6 at 3 n.3.) Movement of merchandise within Chico's' own distribution centers is a quintessential internal handling cost (the labor and overhead of Chico's' fulfillment infrastructure), not postage or carriage paid to a common carrier to ship a good to the consumer. Chico's' Director of Finance has likewise attested that, between July 1, 2024, and April 30, 2026, total merchandise sales for online orders placed from

California across the three Websites exceeded $130,000,000, and that approximately 15% to 25% of online orders carried a Shipping & Processing charge. (*Alonzo*, Dkt. 10-1 ¶ 4.)

***C. Plaintiff's Experience***

27. On May 20, 2026, Plaintiff visited the White House | Black Market Website and purchased a High-Rise Wide Leg Mariner Jean and a Crisscross Halter Vest for a total merchandise price of $224.99. Chico's imposed a combined "Shipping & Processing" fee of $8.95 on top of the displayed merchandise price. Together with $10.72 in sales tax and an additional discount of $115, the total charge was $129.66. *See* ***Figure 4*** below.

**Your Order**

**Ship To:**

Emma Terteryan
[redacted]
Santa Clarita, CA 91350, US
[redacted]

**Shipping Options:**

Shipping Method: Standard
4-10 Business Days
Shipping Charge: $8.95

High-Rise Wide Leg Mariner Jean



Size: 4
Color: White
Style No: 570411046
SKU: 196536797443

Qty. 1 **$63.25**

Crisscross Halter Vest



Size: 4
Color: Butter Toast
Style No: 570405397
SKU: 196536488952

Qty. 1 **$46.74**

| | |
|---|---|
| Order Subtotal: | $224.99 |
| Shipping & Processing: | $8.95 |
| Sales Tax: | $10.72 |
| Additional Discount | -$115.00 |
| **Total:** | **$129.66** |

***Figure 4***

28. Plaintiff works full time and is raising three children. She purchased through the Website for the very reason that online shopping has become ubiquitous. She did not have time to travel to and shop at a brick-and-mortar retail store, and purchasing online allowed her to shop when time permitted, including at night, after retail stores have closed. What Plaintiff sought and paid for was an online transaction with home delivery, not a trip to a retail store.

29. The purchase experience Plaintiff encountered is substantially identical to the experience every consumer encounters on Chico's' Websites. Regardless of the product selected, Chico's does not disclose its handling charge until a consumer is checking out.

***D. The "Shipping & Processing" Charge Cannot Reasonably Be Avoided and Is Therefore Mandatory***

30. The Legislature used the word "mandatory" in California Civil Code § 1770(a)(29)(A) in a deliberately expansive sense. The Assembly Judiciary Committee explained that "'[m]andatory fees' are not defined anywhere in the bill or the CLRA" and that "[t]his simple language is intentionally broad to capture any fee or charge that a consumer cannot reasonably avoid."[4] A fee or charge is therefore "mandatory" if a consumer cannot reasonably avoid it in connection with the transaction for which the price is advertised.

31. A sponsor's explanation of the bill to the Assembly Judiciary Committee underscores the point. The California Low-Income Consumer Coalition, one of SB 478's sponsors, explained that the bill "would simply require that the advertised price of a good or service include all mandatory fees: not sales taxes; not shipping fees that vary; not costs that change depending on what features a consumer may select; just the full price of the item including any charge that is required and is the same for all consumers."[5]

32. The transaction Chico's advertises on the Websites is an online purchase: the consumer selects merchandise remotely, pays remotely, and receives the merchandise by delivery. The prices Chico's advertises, displays, and offers on the Websites are prices for that online transaction. Consumers, like Plaintiff, choose that

---

[4] Assem. Com. on Judiciary, Analysis of Sen. Bill No. 478 (2023–2024 Reg. Sess.), date of hearing June 27, 2023, at 5.
[5] *Id.* at 8.

transaction for its defining feature: the ability to select, pay for, and receive merchandise without traveling to a store.

33. The existence of tiered delivery-speed options does not transform the charge into actual postage or carriage. Whatever tier a consumer selects, the charge remains a flat, bundled amount that includes Chico's' internal processing costs and, on information and belief, is untethered to the postage or carriage Chico's actually incurs for any particular shipment, which varies by package weight, destination, and ship-from location. Chico's itself has acknowledged as much, telling the court in *Alonzo* that "[w]hether the actual postage fees equal or exceed the flat bundled 'Shipping & Processing' fee is highly variable based on several factors including but not limited to postal code, package weight, and ship from location (store/distribution center)." (*Alonzo*, Dkt. 6 at 3 n.3.)

***E. No Adequate Remedy at Law***

34. Plaintiff seeks damages under the CLRA and, in the alternative, equitable relief, including restitution and disgorgement, under the UCL and the FAL. Plaintiff is permitted to seek equitable remedies in the alternative because she lacks an adequate remedy at law.

35. The equitable claims Plaintiff asserts are not duplicative of, and do not require the same showings as, a claim for damages. The UCL and FAL reach unlawful and unfair conduct (including the suppression of transparent price competition) that a damages remedy may not fully redress, and their elements differ from those of a legal claim for damages. Plaintiff may therefore be able to establish liability and obtain restitution or disgorgement under these statutes even if she cannot prove every element required to recover damages.

36. Plaintiff seeks restitution and disgorgement under the UCL and FAL in the alternative to, and as a remedy distinct from, her claim for damages under the CLRA. Plaintiff's recovery of CLRA damages turns on proof of elements that her equitable claims do not require (including, as to the § 1770(a)(9) claim, that Chico's

advertised its prices with the intent not to sell at those prices). If Plaintiff is unable to establish those additional elements, her legal remedy would be unavailable or incomplete, and equitable restitution and disgorgement of the processing charges Chico's unlawfully collected would be the only means of making the Class whole. Because the adequacy of Plaintiff's legal remedy cannot be finally determined until the merits are resolved, her equitable claims may not be foreclosed at the pleading stage.

37. Plaintiff also seeks injunctive relief under the UCL, FAL and CLRA. Legal damages cannot remedy the imminent threat of future harm that Plaintiff and the Class face. Only injunctive relief can stop Chico's from continuing to advertise prices that omit its mandatory processing charge. Plaintiff would like to, and intends to, continue purchasing products from the Websites in the future, and would do so if she could trust that Chico's' advertised prices reflect the true, all-in cost of its merchandise. Absent an injunction, however, Plaintiff cannot rely on the accuracy of Chico's' advertised prices, because Chico's does not disclose the processing component of its charge in the advertised price; as a result, Plaintiff faces an ongoing and imminent risk of again being charged an undisclosed processing fee each time she shops on the Websites. Because Chico's' pricing practice is ongoing and directed at the general public of California consumers, Plaintiff also seeks public injunctive relief prohibiting Chico's from advertising, displaying, or offering prices to the public that omit its mandatory processing fee.

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action as a class action pursuant to Rule 23(a), (b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure.

39. **Proposed Class:** Plaintiff seeks to represent a class defined as all persons in the State of California who purchased any item(s) from Chico's' Websites and were charged a processing fee (whether labeled "Shipping & Processing" or otherwise) at any time during the three years preceding the filing of this Complaint (the "Class").

Excluded from the Class are Chico's, its officers, directors, and members, and any entity in which Chico's holds a controlling interest.

40. **Proposed Subclass:** Plaintiff further seeks to represent a subclass defined as all members of the Class who were charged such a fee on or after July 1, 2024 (the "Transparent Pricing Subclass"). The Class and the Transparent Pricing Subclass are referred to collectively as the "Classes." The same exclusions apply.

41. **Numerosity:** The Classes are so numerous that joinder of all members is impracticable. Chico's is a major national apparel retailer that operates both brick-and-mortar stores and an e-commerce platform serving consumers throughout the United States. On information and belief, the Classes include tens of thousands of California consumers. Chico's' own sworn filings confirm the scale: over $130 million in California online merchandise sales between July 1, 2024 and April 30, 2026, with approximately 15% to 25% of online orders carrying a Shipping & Processing charge. (*See* ¶ 26, *supra*.) The exact number and identities of Class members can be determined through Chico's' transaction records.

42. **Commonality and Predominance:** Common questions of law and fact predominate over any individualized issues. These common questions include, but are not limited to: (a) whether Chico's' "Shipping & Processing" fee includes a handling component; (b) whether Chico's' failure to include the handling component in its advertised prices violates California Civil Code § 1770(a)(29)(A); (c) whether Chico's' practice of advertising prices that exclude the handling fee, with intent not to sell at those advertised prices, violates California Civil Code § 1770(a)(9); and (d) the appropriate form of relief.

43. **Typicality:** Plaintiff's claims are typical of the claims of the Classes. Plaintiff and all Class members were subject to the same pricing practice: Chico's displayed merchandise prices that did not include any handling fee and imposed the fee only at checkout. Plaintiff and all Class members suffered the same type of injury arising from Chico's' uniform conduct.

44. **Adequacy:** Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's interests are aligned with those of the Classes, and she has retained competent counsel with experience in consumer class action litigation. Plaintiff has no conflicts with any member of the Classes.

45. **Superiority:** A class action is the superior method for resolving this dispute. The handling fee at issue in any individual transaction is modest, making it economically impractical for individual consumers to bring separate actions. A class action allows the efficient resolution of thousands of nearly identical claims in a single proceeding, conserves judicial resources, and prevents inconsistent outcomes.

## FIRST CAUSE OF ACTION

### Violation of California Civil Code § 1770(a)(9)

(On Behalf of the Class)

46. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

47. Plaintiff brings this cause of action on behalf of herself and all members of the Class.

48. Plaintiff and the other Class members are "consumers" as the term is defined by California Civil Code § 1761(d), because she and they purchased products from Defendant for personal, family or household purposes.

49. Plaintiff and Defendant, and the other Class members and Defendant, have engaged in "transactions" as that term is defined by California Civil Code § 1761(e).

50. The conduct alleged in this complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

51. California Civil Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

52. Chico's advertised and displayed specific prices for its merchandise on the Websites. Chico's did so with the intent not to sell those products at the displayed prices. Instead, Chico's intended to—and did—charge consumers an additional fee that was not reflected in the advertised price. The true cost of every transaction was higher than the price Chico's displayed.

53. Plaintiff and Class members were harmed because they paid a fee that was not disclosed at the time Chico's advertised the price of its products. By concealing the handling component of the "Shipping & Processing" fee, Chico's prevented Plaintiff and Class members from accurately comparing Chico's' prices with those of competing retailers, suppressing price competition and causing consumers to pay more than they anticipated. As a direct and proximate result of Chico's' violation, Plaintiff and Class members suffered actual damages equal to the undisclosed processing charges they paid.

54. Plaintiff and Class members relied on Chico's' displayed prices in deciding to purchase products from the Websites. No reasonable consumer would expect that the prominently displayed merchandise price would be supplemented by an undisclosed fee beyond lawful sales tax and actual carrier shipping costs.

55. Chico's' conduct was willful, knowing, and undertaken with reckless disregard for consumers' rights. Chico's designed its checkout flow to hide a handling fee and maximize purchase completions. The hidden fee is disclosed only at checkout, exploiting the time and effort consumers have already invested in their transaction.

56. **CLRA Notice.** Before amending this Complaint to seek damages under the CLRA, Plaintiff, through counsel, sent Chico's written notice of its CLRA violations on June 25, 2026, by certified mail, return receipt requested, addressed to Chico's' corporate headquarters in Fort Myers, Florida, in accordance with California Civil Code § 1782(a). Chico's received the CLRA notice on July 8, 2026. The notice demanded that Chico's correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and deceptive practices alleged herein on behalf of Plaintiff and the Class.

More than 30 days have elapsed since Chico's' receipt of the notice, and Chico's has failed to provide, or agree to provide, an appropriate correction, repair, replacement, or other remedy for the Class. To the contrary, on August 7, 2026, Chico's, through counsel, responded to the notice and declined to take any corrective action. Accordingly, pursuant to California Civil Code § 1782(a)-(d), Plaintiff seeks actual damages, punitive damages, and all other monetary and equitable relief available under the CLRA.

57. On behalf of herself and the Class, Plaintiff seeks actual damages, restitution, punitive damages, injunctive relief to halt Chico's' unlawful practices and an award of reasonable attorneys' fees and costs. Cal. Civ. Code § 1780. Plaintiff further seeks the additional statutory damages available under California Civil Code § 1780(b)(1) for those Class members who are senior citizens or disabled persons.

## SECOND CAUSE OF ACTION

### Violation of California Civil Code § 1770(a)(29)(A)

(On Behalf of the Transparent Pricing Subclass)

58. Plaintiff incorporates by reference paragraphs 1-45 as though fully set forth herein.

59. Plaintiff brings this cause of action on behalf of herself and all members of the Transparent Pricing Subclass.

60. Plaintiff and the other Transparent Pricing Subclass members are "consumers" as the term is defined by California Civil Code § 1761(d), because she and they purchased products from Defendant for personal, family or household purposes.

61. Plaintiff and Defendant, and the other Transparent Pricing Subclass members and Defendant, have engaged in "transactions" as that term is defined by California Civil Code § 1761(e).

62. The conduct alleged in this complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA

and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

63. Effective July 1, 2024, California Civil Code § 1770(a)(29)(A) makes it unlawful to "[a]dvertis[e], display[], or offer[] a price for a good or service that does not include all mandatory fees or charges" other than government-imposed taxes or fees and actual postage or carriage charges.

64. Chico's violated this provision by advertising, displaying, and offering prices for merchandise on its Websites that did not include the handling component of the "Shipping & Processing" fee. The handling charge is a "mandatory fee[] or charge[]" that consumers are required to pay in order to complete their purchase from the Websites. Cal. Civ. Code § 1770(a)(29)(A).

65. The handling charge does not fall within either statutory exception. It is not a tax or government-imposed fee. Nor is it "postage or carriage charge[] that will be reasonably and actually incurred to ship the physical good[] to the consumer." Cal. Civ. Code § 1770(a)(29)(A)(ii). Chico's' own account of the fee confirms the point: the processing component covers "distribution center movement," meaning internal fulfillment operations, not carrier charges. (*See* ¶ 26, *supra*.)

66. The "Shipping & Processing" fee, including its processing component, is a "mandatory" fee or charge within the meaning of California Civil Code § 1770(a)(29)(A) because consumers cannot reasonably avoid it. The fee applies by default to online orders; it is charged unless a consumer purchases additional merchandise to meet a free-shipping minimum, obtains a branded credit card or qualifying rewards status, or abandons delivery altogether in favor of in-store pickup; and each of these purported alternatives imposes burdens and costs that equal or exceed the fee itself.

67. Plaintiff and Transparent Pricing Subclass members were injured because they paid Chico's' unlawfully concealed fee. The total cost of their purchases was not disclosed at the outset of the transaction, in violation of California Civil Code §

1770(a)(29)(A). As a direct and proximate result of Chico's' violation, Plaintiff and the Transparent Pricing Subclass members suffered actual damages equal to the undisclosed processing charges they paid.

68. Plaintiff and Transparent Pricing Subclass members were further injured because the concealment of the true cost deprived them of the ability to make informed purchasing decisions. Consumers who were unaware of the handling fee could not meaningfully compare Chico's' all-in price with prices offered by competing retailers.

69. **CLRA Notice.** Before amending this Complaint to seek damages under the CLRA, Plaintiff, through counsel, sent Chico's written notice of its CLRA violations on June 25, 2026, by certified mail, return receipt requested, addressed to Chico's' corporate headquarters in Fort Myers, Florida, in accordance with California Civil Code § 1782(a). Chico's received the CLRA notice on July 8, 2026. The notice demanded that Chico's correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and deceptive practices alleged herein on behalf of Plaintiff and the Class. More than 30 days have elapsed since Chico's' receipt of the notice, and Chico's has failed to provide, or agree to provide, an appropriate correction, repair, replacement, or other remedy for the Class. To the contrary, on August 7, 2026, Chico's, through counsel, responded to the notice and declined to take any corrective action. Accordingly, pursuant to California Civil Code § 1782(a)-(d), Plaintiff seeks actual damages, punitive damages, and all other monetary and equitable relief available under the CLRA.

70. On behalf of herself and the Transparent Pricing Subclass, Plaintiff seeks actual damages, restitution, punitive damages, injunctive relief and an award of reasonable attorneys' fees and costs. Cal. Civ. Code § 1780. Plaintiff further seeks the additional statutory damages available under California Civil Code § 1780(b)(1) for those Class members who are senior citizens or disabled persons.

## THIRD CAUSE OF ACTION

**Violation of California's False Advertising Law**

**(Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**

(On Behalf of the Class)

71. Plaintiff incorporates by reference paragraphs 1-45 as though fully set forth herein.

72. The False Advertising Law prohibits making any false or misleading advertising claim.

73. Defendant makes false and misleading advertising claims by advertising one price and then tacking on a handling fee later.

74. In reliance on these false and misleading advertising claims, Plaintiff and the Class members purchased products from Defendant without knowledge of the true cost that they were going to have to pay.

75. Defendant knew or should have known that its representations and omissions were likely to deceive consumers.

76. As a result, Plaintiff and the Class members seek injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched. Plaintiff seeks such equitable relief in the alternative to her legal claim for damages under the CLRA, as alleged in Section E above.

## FOURTH CAUSE OF ACTION

**Violation of California's Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

(On Behalf of the Class)

77. Plaintiff incorporates by reference paragraphs 1-45 as though fully set forth herein.

78. By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§

17200-17210, as to the Class as a whole, by engaging in unlawful, fraudulent, and unfair conduct.

79. **Unlawful Conduct**. Defendant has violated the UCL's proscription against engaging in unlawful conduct as a result of violations of the CLRA, Cal. Civ. Code § 1770(a)(9) and (a)(29) and the FAL, as alleged above.

80. **Unfair Conduct.** Defendant's acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

81. Plaintiff and the other Class members suffered a substantial injury by virtue of buying products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair practice of not disclosing the true cost upfront.

82. There is no benefit to consumers or competition from concealing the true cost, other than to increase Defendant's own profits.

83. The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefor, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other Class members.

84. **Fraudulent Conduct**. Defendant's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

85. The representations and omissions constitute "fraudulent" business acts and practices because they are false and misleading to Plaintiff and the Class members.

86. Defendant's representations and omissions deceived Plaintiff and the Class members about the true cost of the products.

87. Defendant knew or reasonably should have known that its statements and omissions about the cost of the products were likely to deceive consumers.

88. Plaintiff and the other Class members suffered a substantial injury by virtue of buying products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair conduct.

89. Plaintiff and the other Class members had no way of reasonably knowing that they were going to be charged an extra handling fee. Thus, they could not have reasonably avoided the injury each of them suffered.

90. Defendant's violations of the UCL continue to this day. Pursuant to California Business and Professions Code § 17203, Plaintiff and the Class seek an order of this Court that includes an order requiring Defendant to:

a. Refrain from adding an extra fee on purchases without disclosing the fee upfront;
b. Provide restitution to Plaintiff and the other Class members;
c. Disgorge all revenues obtained as a result of violations of the UCL; and
d. Pay Plaintiff's and the Class's attorneys' fees and costs.

## **FIFTH CAUSE OF ACTION**

### **Quasi-Contract/Unjust Enrichment**

(On Behalf of the Class, Pleaded in the Alternative)

91. Plaintiff incorporates by reference paragraphs 1-45 as though fully set forth herein.

92. Plaintiff brings this cause of action on behalf of herself and all members of the Class. Plaintiff pleads this claim for unjust enrichment in the alternative to her legal claim for damages under the CLRA, and only to the extent the Court determines that Plaintiff lacks an adequate remedy at law.

93. By paying the processing charge that Chico's concealed within its "Shipping & Processing" fee, Plaintiff and Class members conferred a benefit on Chico's. Chico's was aware of, accepted, and retained that benefit.

94. Chico's obtained this benefit through the unfair and deceptive conduct alleged herein: advertising, displaying, and offering prices that did not include the mandatory processing charge, and disclosing the charge only after consumers had

selected their merchandise and reached checkout. Because the processing charge was never disclosed in Chico's' advertised prices, Plaintiff and Class members did not knowingly or voluntarily agree to pay it.

95. Under principles of equity, Chico's should not be permitted to retain the processing charges it obtained from Plaintiff and the Class by means of the conduct alleged herein. It would be unjust and inequitable for Chico's to retain those amounts.

96. Plaintiff and the Class are entitled to restitution of the processing charges Chico's wrongfully obtained, disgorgement of the amounts by which Chico's was unjustly enriched, and the imposition of a constructive trust over those amounts.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the members of the Classes, respectfully requests that this Court enter judgment as follows:

A. Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiff as Class representative, and appoint Plaintiff's counsel as Class Counsel;

B. Declare that Chico's' conduct, as described herein, violates California Civil Code §§ 1770(a)(9) and 1770(a)(29)(A), the UCL and FAL;

C. Enter judgment in favor of Plaintiff and the Classes on each cause of action asserted herein;

D. Award Plaintiff and the Classes actual and punitive damages under the California Consumers Legal Remedies Act, Cal. Civ. Code § 1780;

E. Award Plaintiff and the Classes pre- and post-judgment interest as permitted by law;

F. Award restitution to Plaintiff and the Classes;

G. Award disgorgement to Plaintiff and the Classes;

H. Impose a constructive trust over the processing charges by which Chico's was unjustly enriched;

I. Award Plaintiff and the Classes the additional statutory damages available for senior citizens and disabled persons under California Civil Code § 1780(b)(1);

J. Enter public injunctive relief prohibiting Chico’s from advertising, displaying, or offering prices to the general public that fail to include all mandatory fees or charges, including any processing or handling fee;

K. Permanently enjoin Chico’s from advertising, displaying, or offering prices for goods on its Websites that fail to include all mandatory fees or charges, including any handling fee;

L. Award Plaintiff and the Classes their reasonable attorneys’ fees and costs of suit; and

M. Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Dated: August 14, 2026

**BEN TRAVIS LAW, APC**
By: *__/s/ Ben Travis__*
Ben Travis (State Bar No. 305641)
ben@bentravislaw.com
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: 619-353-7966

**DAPEER LAW, P.A.**
By: /s/ Lisa M. Freeman
Lisa M. Freeman (State Bar No. 258549)
lisa@dapeer.com
11500 W Olympic Blvd, Suite 550
Los Angeles, CA 90064
Telephone: 323-701-0508

Attorneys for Plaintiff

**VENUE AFFIDAVIT**

I, Emma Terteryan, declare and state as follows:

1. I am the named Plaintiff in this action and make this affidavit pursuant to California Civil Code § 1780(d).

2. The First Amended Complaint in this action is filed in a proper place for trial of this action because Defendant is doing business in the County of Los Angeles. Furthermore, I made a purchase from Defendant while in the County of Los Angeles.

I declare under penalty of perjury under the laws of the state of California and the United States that the foregoing is true and correct.

Executed on 08/14/2026 in Los Angeles, California.

EMMA TERTERYAN